**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| | * | |
| **INTERNATIONAL PAINTERS AND** | * | |
| **ALLIED TRADES INDUSTRY** | * | |
| **PENSION FUND**, *et al.*, | * | |
| | * | |
| **Plaintiffs,** | * | |
| | * | |
| **v.** | * | **Civil No. SAG-23-00045** |
| | * | |
| **FLORIDA GLASS** | * | |
| **OF TAMPA BAY, INC.**, *et al.*, | * | |
| | * | |
| **Defendants.** | * | |
| | * | |

*     *     *     *     *     *     *     *     *     *     *     *     *

**MEMORANDUM OPINION**

Plaintiff International Painters and Allied Trades Industry Pension Fund and its fiduciary, Terry Nelson (collectively, "the Fund"), filed this action seeking to collect withdrawal liability and additional statutory damages pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"). ECF 1. Defendants Florida Glass of Tampa Bay, Inc. ("Florida Glass"); American Products, Inc.; American Products Production Company of Pinellas County, Inc.; API Commercial Installation, Inc.; API Commercial Architectural Products, Inc.; Charles & Thomas Properties, LLC; Muraco & Mullan Properties, Inc.; Ceraclad South, LLC; JCM Properties LLC; Fenwall, LLC; and Specialty Metals Installation, LLC (collectively, "Defendants") have in turn asserted a three-count counterclaim seeking declaratory and injunctive relief stating, *inter alia*, that the Fund's action is time-barred and that Defendants are not required to contest their alleged withdrawal liability or make interim payments on that liability, as required by the MPPAA.

Two motions are pending. First, Defendants have filed a motion for a preliminary injunction, which seeks to prevent Defendants from having to arbitrate or make interim withdrawal payments until their counterclaim is resolved. ECF 7, 13. The Fund filed an opposition, ECF 18, and Defendants replied, ECF 24. The Fund also filed a motion for leave to file a surreply, which Defendants oppose. ECF 25, 29, 31. Second, the Fund has filed a motion to dismiss Defendants' counterclaim, ECF 21, which is also fully briefed, ECF 26, 30. No hearing is necessary to resolve these motions. *See* Local Rule 105.6 (D. Md. 2021). For the reasons that follow, the Fund's motion to dismiss, ECF 21, will be GRANTED and Defendants' counterclaim will be DISMISSED without prejudice; Defendants' motion for a preliminary injunction, ECF 7, will be DENIED; and the Fund's motion for leave to file a surreply, ECF 25, will be DENIED AS MOOT.

## I.   FACTUAL BACKGROUND

Unless otherwise noted, the following facts are derived from Defendants' Counterclaim, ECF 6, and are assumed to be true for purposes of resolving the motion to dismiss. The Fund is a multiemployer employee benefit pension plan. *Id*. ¶ 15. Florida Glass is a now-defunct corporation that was previously party to the National Agreement for Glaziers, Architectural Metal and Glass Workers ("CBA") with the International Union of Painters and Allied Trades. *Id*. ¶¶ 21, 22. The CBA obligated Florida Glass to contribute to the Fund for certain covered work performed by its employees. *Id*. ¶ 21. The remaining Defendants are entities who are under common control with Florida Glass, and therefore are treated as a single employer for purposes of ERISA and the MPPAA. *Id*. ¶ 13; 29 U.S.C. §1301(b)(1).

Florida Glass ceased operations in 2015 and withdrew from the Fund. ECF 6, Countercl. ¶ 22. Under the MPPAA, most employers who withdraw from underfunded multiemployer pension plans must pay "withdrawal liability" to the plan. 29 U.S.C. § 1381(a). On August 9, 2016, Florida Glass filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the Middle

District of Florida. *Id*. ¶ 23. On November 10, 2016, the Fund filed a Proof of Claim in the bankruptcy proceedings in the amount of $1,577,168 for "Contingent Statutory Withdrawal Liability." *Id*. ¶ 24; ECF 6-3. The Fund asserted that $202,342.87 of its claim was entitled to priority status under the Bankruptcy Code. ECF 6, Countercl. ¶ 25; ECF 6-3 at 4. The Chapter 11 proceedings were later converted to Chapter 7 liquidation proceedings, and the Fund was eventually paid $48,349.35 on its claim. ECF 6, Countercl. ¶¶ 23, 27.

On March 16, 2022, the Fund sent demand letters to Defendants asserting liability of $1,577,168 in connection with Florida Glass's withdrawal from the Fund. *Id*. ¶ 28; ECF 1-1. Pursuant to the MPPAA's dispute-resolution procedures, *see* 29 U.S.C. § 1399(b)(2), Defendants submitted to the Fund a request for review of its withdrawal liability on April 14, 2022. ECF 6, Countercl. ¶ 29. On July 13, 2022, the Fund's counsel sent an email to Defendants' counsel stating that his firm now represented the Fund. ECF 6-6. In that same email, the Fund's counsel acknowledged Defendants' request for review and stated that he would "try to turn [his] attention to it as soon as [he] can" but that "[he] might not be able to get to it right away." *Id*. Defendants allege that they interpreted the email as an offer to toll the statutory deadline to initiate arbitration over the Fund's withdrawal liability demand. ECF 6, Countercl. ¶ 32; *see* 29 U.S.C. § 1401(a)(1). The Fund ultimately denied Defendants' request for review on November 30, 2022. ECF 6, Countercl. ¶ 34.

On January 9, 2023, the Fund filed the instant action to collect withdrawal liability pursuant to 29 U.S.C. § 1451. ECF 1. The Fund's Complaint asserted, among other things, that Defendants had failed to timely initiate arbitration, and therefore the amount of withdrawal liability claimed in the Fund's demand letters was due and owing according to the payment schedule the Fund provided. *Id*. ¶ 41 (citing 29 U.S.C. § 1401(b)(1)). Eleven days later, on January 20, 2023,

Defendants initiated arbitration over their withdrawal liability, asserting the arbitration demand was timely because it was filed within 60 days of the Fund's denial of its request for review. ECF 6, Countercl. ¶ 35 (citing 29 U.S.C. § 1401(a)(1)(A)); ECF 6-7 at 2.

On March 9, 2023, Defendants answered the Complaint, raised various affirmative defenses (including that the Fund's action was barred by the applicable statute of limitations), and filed a counterclaim with three counts seeking declaratory and injunctive relief. ECF 6. Defendants also filed a motion for a preliminary injunction based on the first two counts of their counterclaim. ECF 7. Specifically, Defendants' motion asks this Court to (1) preliminarily enjoin Defendants from having to proceed with arbitration or make interim withdrawal liability payments until Count I of their counterclaim is resolved, or (2) if this Court does not enjoin the arbitration, prohibit the Fund from collecting interim liability payments while the arbitration proceeds. *Id.*; ECF 13.

## II.   LEGAL STANDARDS

### A.  Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to test the legal sufficiency of a complaint, or, like here, a counterclaim, by way of a motion to dismiss. *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion that, even if the facts alleged by a plaintiff or counterplaintiff are true, the complaint or counterclaim fails as a matter of law "to state a claim upon which relief can be granted." *See In re Birmingham*, 846 F.3d at 92.

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Federal Rule of Civil Procedure 8(a)(2). That rule provides that a complaint must

contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . .") (citation omitted); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). But, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440

(4th Cir. 2011) (citations omitted); *see Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011). But, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011).

### B.  Preliminary Injunction

A preliminary injunction is warranted when the movant demonstrates four factors: (1) that the movant is likely to succeed on the merits, (2) that the movant will likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities favors preliminary relief, and (4) that injunctive relief is in the public interest. *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 236 (4th Cir. 2014) (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). The movant must establish all four elements in order to prevail. *Pashby v. Delia*, 709 F.3d 307, 320-21 (4th Cir. 2013).

A preliminary injunction, affords an "extraordinary remed[y] involving the exercise of very far-reaching power [that is] to be granted only sparingly and in limited circumstances." *MicroStrategy, Inc. v. Motorola, Inc.*, 245 F.3d 335, 339 (4th Cir. 2001) (quotation omitted). Because preliminary injunctions are intended to preserve the status quo during the pendency of litigation, injunctions that "alter rather than preserve the status quo" are particularly disfavored. *Mountain Valley Pipeline, LLC v. 6.56 Acres of Land*, 915 F.3d 197, 216 n.8 (4th Cir. 2019). Courts should grant such "mandatory" preliminary injunctions only when "the applicant's right to relief [is] indisputably clear." *Id*. (quotation omitted).

### III.  ANALYSIS

### A.  Motion to Dismiss

Because Defendants' preliminary injunction motion depends on the viability of their counterclaim, this Court will begin by analyzing the Fund's motion to dismiss that counterclaim. Counts I and II of Defendants' counterclaim seek relief under the Declaratory Judgment Act. That Act provides that a district court, in a case or controversy within its jurisdiction "*may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis added). "By its very nature, then, declaratory relief is granted at the discretion of the Court; it is not 'an absolute right' of the litigant." *Mansaray v. Mut. Benefit Ins. Co.*, Civ. No. PX 17-0098, 2017 WL 2778824, at *7 (D. Md. June 26, 2017) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995)); *see also Cont'l Cas. Co. v. Fuscardo*, 35 F.3d 963, 965 (4th Cir. 1994) ("The statute does not impose a mandatory obligation upon the federal courts to make such declarations of rights."). "In the exercise of its broad discretion, the court may decline to exercise its jurisdiction and dismiss the action for good reason." *Mansaray*, 2017 WL 2778824, at *7 (quotations and citations omitted). A court should normally entertain a declaratory action within its jurisdiction where the "relief sought (i) will serve a useful purpose in clarifying and settling the legal relations in issue, and (ii) will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Fuscardo*, 35 F.3d at 965 (quotation omitted).

Additionally, Count III of Defendants' counterclaim seeks "preliminary and permanent injunctive relief" based on the same facts and theories as their two Declaratory Judgment Act claims. *Id*. ¶¶ 64-73. For the reasons stated below, this Court agrees with the Fund that all three counts of the counterclaim are subject to dismissal.

1.  *Count I*

Defendants' Count I asserts that the instant lawsuit filed by the Fund pursuant to 29 U.S.C. § 1451 is time-barred, and they therefore seek a declaration (1) that Defendants owe the Fund no withdrawal liability; (2) that the Fund may not require Defendants to arbitrate their challenges to the withdrawal liability demand; and (3) that the Fund must refund any installment payments Defendants have made so far on that demand. ECF 6, Countercl. ¶ 48.

As noted above, "[t]he [MPPAA] requires most employers who withdraw from underfunded multiemployer pension plans to pay 'withdrawal liability.'" *Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 196 (1997) (quoting 29 U.S.C. § 1381(a)). The employer can discharge that liability either by making a series of periodic payments according to a post-withdrawal schedule set by the pension fund's trustees, or by prepaying the outstanding principal plus accrued interest. 29 U.S.C. § 1399(c)(1)(C), (c)(3), (c)(4). The MPPAA directs a pension fund's trustees to set an installment schedule and demand payment according to that schedule "[a]s soon as practicable" after the employer's withdrawal. § 1399(b)(1); *Bay Area Laundry*, 522 U.S. at 196-97. However, a pension plan may also accelerate an employer's withdrawal liability, thereby making the full amount due at once, in the event of a "default." § 1399(c)(5). Such a "default" occurs when the employer fails to make payments according to the proposed installment schedule or (as relevant here) upon the occurrence of "any other event defined in the rules adopted by the plan which indicates a substantial likelihood that an employer will be unable to pay its withdrawal liability." *Id.*

If an employer fails to make the required withdrawal liability payments, a plan fiduciary can file a civil action in federal court to collect. 29 U.S.C. § 1451(a)(1); *Trs. of Plumbers & Pipefitters Nat'l Pension Fund v. Mar-Len, Inc.*, 30 F.3d 621, 624 (5th Cir. 1994). "Suit under

§ 1451 must be filed within the longer of two limitations periods: '6 years after the date on which the cause of action arose,' § 1451(f)(1), or '3 years after the earliest date on which the plaintiff acquired or should have acquired actual knowledge of the existence of such cause of action,' § 1451(f)(2)." *Bay Area Laundry*, 522 U.S. at 198.

Here, Defendants' Count I relies on their contention that the Fund filed the instant action more than six years after its cause of action accrued. Specifically, Defendants contend that Florida Glass's bankruptcy filing constituted a "default" which allowed the Fund to accelerate the withdrawal liability under § 1399(c)(5),[1] and further that the Fund exercised its acceleration option when it filed its bankruptcy Proof of Claim for the full withdrawal liability amount on November 10, 2016. The Fund did not file the instant action until January 9, 2023, more than six years after it submitted the Proof of Claim in the bankruptcy proceedings.

Regardless of the merits of the limitations issue, the Fund asserts that this Court should dismiss Count I because it is duplicative of Defendants' statute of limitations affirmative defense to the Fund's complaint. Federal Rule of Civil Procedure 8(c)(1) requires a defendant to "affirmatively state any avoidance or affirmative defense, including . . . statute of limitations." Here, Defendants have indeed pled the statute of limitations as an affirmative defense. ECF 6 at p. 12 ¶ 2. But they have *also* pled MPPAA's limitations provision as the basis for Count I of their counterclaim. *Id*., Countercl. ¶ 48 (requesting declaratory relief because "the Fund's collection action is time-barred under 29 U.S.C. § 1451(f)"). The Fund thus argues that Defendants' counterclaim is "merely a defense characterized as a counterclaim" and should be dismissed. *Mansaray*, 2017 WL 2778824, at *7.

---

[1] The Fund's rules allow it to declare an insecurity default if, among other things, "[o]ther events [occur] affecting the Control Group Employer that indicate a substantial likelihood that the Control Group Employer will be unable to pay its Withdrawal Liability." ECF 13-1 at 93-94, § 11.28(e).

This Court agrees with the Fund. It is undisputed that, should Defendants prevail on their statute of limitations defense, the Fund (1) could no longer collect liability payments from Defendants in this action, and (2) would be required to refund any payments already collected. *See* ECF 30 at 5 (Pl. Reply) (conceding as much). This is the same relief Defendants would receive if this Court granted the declaration they seek. Defendants nonetheless argue that the requested declaratory relief is broader than their affirmative defense because it asks for a declaration that the Fund's withdrawal liability demand is "legally inoperative" and does not trigger obligations outside this lawsuit. ECF 26 at 2, 5-7. But Defendants' counterclaim has not identified a basis that could support such a broad ruling about the viability of the withdrawal liability demand itself. Rather, Count I merely alleges that *this collection action* is time-barred pursuant to 29 U.S.C. § 1451(f) because it was brought six years after the cause of action accrued. ECF 6, Countercl. ¶ 48.[2] This is the exact same issue presented by Defendants' affirmative limitations defense. *See*

---

[2] Defendants' contention that the Fund's demand is "legally inoperative" appears to conflate the timeliness of this enforcement action with the timeliness of the withdrawal liability demand. While the parties agree that the timeliness of this action is governed by 29 U.S.C. § 1451, that statute pertains only to civil actions in federal district court. *See* § 1451(c). However, as the First Circuit has explained, whether the withdrawal liability demand is itself timely is governed by 29 U.S.C. § 1399(b)(1), which requires that a demand for withdrawal liability payment be made "as soon as practicable." *Giroux Bros. Transp. v. New England Teamsters & Trucking Indus. Pension Fund*, 73 F.3d 1, 3 (1st Cir. 1996) ("We therefore hold that questions concerning the timeliness of a plan sponsor's demand are governed exclusively by § 1399(b)(1)."). Moreover, "any dispute regarding the timeliness of the Fund's demand under § 1399(b)(1) is statutorily committed to arbitration in the first instance." *Id*. at 4 (citing 29 U.S.C. § 1401(a)(1)); *see also Dairy Emps. Union Loc. No. 17 v. Poel*, Civ. No. 12-4550 FMO (OPX), 2014 WL 12884088, at *6 (C.D. Cal. Sept. 15, 2014) ("To the extent the subject affirmative defenses are based on allegations relating to whether plaintiffs timely notified defendant of its withdrawal liability . . . such affirmative defense[] could have and should have been raised during the arbitration proceedings[.]"). *Cf. Bay Area Laundry*, 522 U.S. at 205 ("[I]f an employer believes the trustees have failed to comply with their 'as soon as practicable' responsibility, the employer may assert that violation as a laches objection at an arbitration contesting the withdrawal liability assessment."). Thus, the appropriate means for a defendant to challenge the "legal operability" of a withdrawal liability demand is through arbitration, subject to further review of the arbitrator's ruling in this Court. *See* 29 U.S.C.

*Sarkis' Cafe, Inc. v. Sarks in the Park, LLC*, 55 F. Supp. 3d 1034, 1038 (N.D. Ill. 2014) ("Where the substantive suit would resolve the issues raised by the declaratory judgment action, the declaratory judgment action serves no useful purpose . . . ." (quotations and citations omitted)). As a result, adjudicating Count I of the counterclaim will neither assist in "clarifying and settling the legal relations in issue," nor "terminate and afford relief" from the uncertainties leading to this dispute. *Fuscardo*, 35 F.3d at 965 (quotation omitted). Rather, considering Count I "would force 'the court to handle the same issues twice.'" *Mansaray*, 2017 WL 2778824, at * 7 (quoting *Penn Mut. Life Ins. Co. v. Berck*, Civ. No. DKC 09-0878, 2010 WL 3294305, at *3 (D. Md. Aug. 20, 2010)). The counterclaim (and preliminary injunction motion) appears to be an effort to upset the normal order of operations in this litigation by advancing consideration of the affirmative limitations defense to the front of the line. This Court therefore declines to exercise its discretion under the Declaratory Judgment Act to consider Count I of Defendants' counterclaim, which will be dismissed.

### 2.  Count II

Count II seeks a declaration that Defendants are exempt from the MPPAA's "pay now, dispute later" rule requiring employers to make interim payments while they arbitrate the extent of their withdrawal liability. ECF 6 ¶¶ 53-63.

The MPPAA prescribes a dispute-resolution procedure for employers challenging a withdrawal liability demand that involves (1) a request for review of the liability determination by the pension plan and (2) if the parties still disagree, arbitration. *See* 29 U.S.C. §§ 1399(b)(2), 1401(a)(1); *Bay Area Laundry*, 522 U.S. at 197. All disputes regarding the assessment and

---

§ 1401(b)(2) (permitting a party to a bring an action "in an appropriate United States district court in accordance with section 1451 of this title to enforce, vacate, or modify the arbitrator's award").

calculation of withdrawal liability must be arbitrated. § 1401(a)(1); *Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund. v. BES Servs., Inc.*, 469 F.3d 369, 375 (4th Cir. 2006) ("[T]he MPPAA requires arbitration in the first instance for *any dispute* concerning a determination of withdrawal liability[.]"). Once an employer submits to a pension plan a request for review of its withdrawal liability determination, the deadline to initiate arbitration is the earlier of (1) 60 days after the plan responds to the employer's request for review, or (2) 180 days after the date of the employer's request for review. § 1401(a)(1). If no party timely initiates arbitration, the installments become "due and owing on the schedule set forth by the plan sponsor." § 1401(b)(1). "In such a circumstance, an employer is deemed to have waived review of all issues concerning the determination of withdrawal liability." *Trs. of the Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 441 (4th Cir. 2015) (citing *BES Servs.*, 469 F.3d at 375).

Additionally, "[e]ven if the employer challenges the trustees' withdrawal liability determination . . . it still must pay according to the trustees' schedule in the interim under the [MPPAA's] pay now, dispute later collection procedure." *Bay Area Laundry*, 522 U.S. at 197 (quotations omitted). Specifically, the MPPAA requires that withdrawal liability "shall be payable in accordance with the schedule set forth by the plan sponsor . . . beginning no later than 60 days after the date of the demand *notwithstanding any request for review or appeal* . . . ." § 1399(c)(2) (emphasis added); *see also* § 1401(d) ("Payments shall be made by an employer in accordance with the determinations made under this part until the arbitrator issues a final decision with respect to the determination submitted for arbitration . . . ."); *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991) (explaining that the MPPAA "unambiguously established a 'pay now, dispute later' dispute resolution procedure designed to protect the financial stability

of multi-employer pension plans from unnecessary risk caused by protracted delay in the collection of withdrawal liability payments").

As noted above, after this lawsuit was filed, Defendants initiated arbitration in an effort to challenge the Fund's withdrawal liability determination. Sections 1399(c)(2) and 1401(d) of the MPPAA dictate, however, that the installment payments demanded by the Fund "shall be" made notwithstanding Defendants' attempts to challenge their withdrawal liability determination via arbitration. Nonetheless, the Fourth Circuit has recognized that some courts allow an equitable exception to the MPPAA's pay now, dispute later requirement if an employer "makes a facial constitutional attack or shows that irreparable injury will result from being forced to make the interim payments" while the withdrawal liability is being challenged. *Centra*, 947 F.2d at 120. Courts adopting this exception also generally require the employer to show that a pension plan's withdrawal liability demand is frivolous. *See, e.g.*, *Trs. of Chi. Truck Drivers, Helpers & Warehouse Workers Union (Independent) Pension Fund v. Rentar Indus, Inc.*, 951 F.2d 152, 155 (7th Cir. 1991); *Mar-Len, Inc.*, 30 F.3d at 625-26. Defendants thus seek a declaration that they are equitably excepted from making installment payments while they arbitrate, because the Fund's demand is frivolous[3] and because making interim payments will cause irreparable harm by forcing Defendants to liquidate their business assets and cease operations.

The Fund makes several arguments in favor of dismissal. First, it urges this Court to hold that no equitable exception exists to the pay now, dispute later rule. While the Fourth Circuit stated in *Centra* that courts had generally recognized and applied the equitable exception in limited

---

[3] Specifically, Defendants argue that the Fund's demand is frivolous because Defendants have not withdrawn from the Fund pursuant to the MPPAA's construction industry exemption, 29 U.S.C. § 1381(b)(1), and further because the Fund's withdrawal liability demand must be reduced to account for Florida Glass's bankruptcy. ECF 6 ¶¶ 57, 58; ECF 26 at 11-17.

circumstances, the exception was ultimately not applicable in *Centra* because the employer had not asserted any irreparable injury that would result from withdrawal liability. 947 F.2d at 120. Other courts have thus characterized *Centra*'s discussion of the equitable exception as dicta. *See, e.g.*, *Findlay Truck Line, Inc. v. Cent. States, Southeast & Southwest Areas Pension Fund*, 726 F.3d 738, 752 (6th Cir. 2013); *Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. Courtad Const. Sys., Inc.*, 439 F. Supp. 2d 574, 582 n. 13 (E.D. Va. 2006); *but see Asbestos Workers Loc. 24 Pension Fund v. NLG Insulation, Inc.*, 760 F. Supp. 2d 529, 537 (D. Md. 2010) (quoting *Centra*'s discussion of the equitable exception). Absent binding authority, the Fund urges us to follow the reasoning of the Sixth Circuit in *Findlay*, which held that the plain language of sections 1399(c)(2) and 1401(d)—both of which require that installment payments "shall" be made by the employer while arbitration plays out—foreclosed courts' ability to grant an equitable exception to the pay now, dispute later rule. 726 F.3d at 752-54. In so holding, however, the Sixth Circuit acknowledged it was going against the weight of authority from several other circuit courts that had adopted the equitable exception or (like the Fourth Circuit) suggested its existence. *Id*. at 752.

Ultimately, this Court need not decide whether to apply the MPPAA's equitable exception, because it agrees with the Fund that Defendants have failed to plead that they timely initiated arbitration in the first instance. As noted above, the deadline for Defendants to initiate arbitration to challenge their withdrawal liability determination was the earlier of (1) 60 days after the plan responds to Defendants' request for review, or (2) 180 days after the date of Defendants' request for review. 29 U.S.C. § 1401(a)(1). The Fund sent its withdrawal liability demand letter on March 16, 2022. ECF 6, Countercl. ¶ 28. While Defendants timely submitted a request for review to the Fund on April 14, 2022, they received no official response to that request for several months. *Id*. ¶¶ 29, 34. Thus, the latest date for Defendants to initiate arbitration was 180 days after their request

for review—that is, October 11, 2022. Defendants did not initiate arbitration until January 20, 2023, well after that deadline. *Id.* ¶ 35.

Defendants nonetheless allege that the Fund implicitly agreed to toll the arbitration deadline, thus rendering the arbitration request timely. Specifically, Defendants rely on the July 13, 2022 email sent by the Fund's counsel. *Id.* ¶¶ 30-35; ECF 6-6. In that email, the Fund's counsel informed Defendants' counsel that his law firm was now representing the Fund in its withdrawal liability matters. *Id.* The Fund's counsel then stated:

> I see that in April you submitted a request for review on behalf of the "Represented Parties" but I haven't had a chance to dig into the file.
>
> I'll try to turn my attention to it as soon as I can, but just wanted to introduce myself in the meantime because it's been pretty busy around here transitioning all of the cases and I might not be able to get to it right away.

*Id.* Defendants allege that they "interpreted [counsel's] representation that he was experiencing delays in responding to Defendants' request for review but that he would do so 'as soon as [he] can' as an offer to toll Defendants' deadline to initiate arbitration." ECF 6, Countercl. ¶ 32; *see also Steelworkers Pension Tr. v. Renco Grp., Inc.*, 694 F. App'x 69, 72 (3d Cir. 2017) (acknowledging that parties may agree to toll the deadline to demand arbitration pursuant to ERISA and the MPPAA). Defendants therefore allege that arbitration was timely, because it was initiated within 60 days of the Fund's eventual denial of the request for review.[4]

---

[4] In their Notice of Initiation and Demand for Arbitration ("Notice and Demand"), Defendants asserted that the arbitration was timely because the statutory deadline had been "equitably tolled by the actions and inactions of the Fund and its Counsel." ECF 6-7 at 2. However, the Fourth Circuit has squarely held that "[t]he doctrine of equitable tolling is inapplicable in MPPA cases" in assessing whether an employer timely initiated arbitration. *McDonald v. Centra*, 946 F.2d 1059, 1065 (4th Cir. 1991). Accordingly, Defendants' counterclaim abandons this equitable tolling theory in favor of the alleged implicit tolling agreement described above. ECF 6, Countercl. ¶ 32. The Fund argues, however, that the assertion of equitable tolling in the Notice and Demand, which is attached to Defendants' pleading, supersedes any conflicting allegations of implicit tolling. *See* ECF 30 at 9; *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. Openband at Broadlands, LLC*,

An implied contract is "an agreement which legitimately can be inferred from intention of the parties as evidenced by the circumstances and the ordinary course of dealing and the common understanding of men." *Kantsevoy v. LumenR LLC*, 301 F. Supp. 3d 577, 598 (D. Md. 2018) (quoting *Cnty. Comm'rs of Caroline Cnty. v. J. Roland Dashiell & Sons, Inc.*, 747 A.2d 600, 606 (Md. 2000)). But even accepting all facts in the counterclaim as true and drawing all reasonable inferences in Defendants' favor, this Court concludes they have failed to allege a meeting of the minds with respect to tolling the arbitration deadline. While Defendants allege that they interpreted the email as an offer to toll the arbitration deadline, subjective belief alone cannot form the basis for a contractual agreement. *See Davis v. York Int'l Corp.*, Civ. No. A. HAR 92-3545, 1993 WL 180224, at *1-2 (D. Md. May 24, 1993); WILLISTON ON CONTRACTS § 4:1 (2022) ("In the formation of contracts, . . . it was long ago settled that secret, subjective intent is immaterial, so that mutual assent is to be judged only by overt acts and words rather than by the hidden, subjective or secret intention of the parties."). The statements by the Fund's counsel that he would "try to turn [his] attention to [the request for review] as soon as I can," but that he "might not be able to get to it right away," ECF 6-6, cannot reasonably be interpreted as an offer to toll the arbitration deadline. The email makes no mention of arbitration, and Defendants have failed to allege

---

713 F.3d 175, 182 (4th Cir. 2013) ("In the event of conflict between the bare allegations of the complaint and any exhibit attached to the complaint, the exhibit prevails." (cleaned up)). This Court disagrees with the Fund. Whether arbitration was timely initiated pursuant to § 1401(a)(1)(A) is a legal question for this Court to decide in the first instance. *See* § 1401(a)(1) (stating that the MPPAA's arbitration requirement only extends to "determination[s] made under *sections 1381 through 1399* of this title" (emphasis added)); *Doherty v. Teamsters Pension Tr. Fund of Philadelphia & Vicinity*, 16 F.3d 1386, 1391 n.4 (3d Cir. 1994), *as amended on reh'g* (Mar. 17, 1994) ("[I]t is for the court, not the arbitrator, to determine whether the initiation of arbitration is timely.). The Fund cites no authority that precludes Defendants from raising *additional* timeliness theories in this action or that otherwise limits Defendants to the arguments for timeliness made in their Notice and Demand.

additional circumstances or course-of-dealing evidence that would support their alleged interpretation. Additionally, Defendants have not pled that they communicated an acceptance or otherwise engaged in conduct manifesting their acceptance of the alleged offer. Defendants have not alleged, for example, that they replied to the Fund's counsel or communicated their understanding of the email as an offer to toll the arbitration deadline. At most, Defendants have pled that, as a result of the email, they "continued to wait on a response from the Fund to their April 14, 2022 request for review before initiating arbitration." ECF 6 ¶ 33. Such unexpressed "conduct" is insufficient to manifest assent or support the inference of an agreement between the parties to toll the arbitration deadline.

Ultimately, then, Defendants have failed to plead sufficient facts alleging an implied tolling agreement. Absent tolling, Defendants' attempt to arbitrate their withdrawal liability determination is clearly untimely. Because Defendants' counterclaim seeks a declaration that they are not required to make interim payments while they arbitrate their withdrawal liability—and because such arbitration has been waived for the reasons explained above, *see Plumbing Servs., Inc.*, 791 F.3d at 441—Defendants' Count II fails to state a claim for relief and must be dismissed.[5]

3.  *Count III*

While Count III of Defendants' counterclaim seeks preliminary and permanent injunctive relief instead of declaratory relief, it is based on the same facts and theories underlying Counts I and II. *See* ECF 6, Countercl. ¶¶ 64-73. Indeed, Defendants acknowledge that Count III requests "injunctive relief implementing the relief requested in Counts I and II." ECF 26 at 2. Because this

---

[5] Because this Court concludes that Defendants cannot avail themselves of the equitable exception to the pay now, dispute later requirement because they have waived arbitration, it declines to address whether Defendants have adequately plead the elements of that exception—that is, that the Fund's demand is frivolous and that interim withdrawal payments will cause Defendants irreparable harm.

Court has already concluded that Counts I and II are subject to dismissal, Defendants' Count III must likewise be dismissed.

### B.  Preliminary Injunction

Defendants' motion for a preliminary injunction is essentially resolved by this Court's ruling that the counterclaim will be dismissed. Defendants seek a two-prong preliminary injunction prohibiting Defendants from (1) having to proceed with arbitration or make interim withdrawal liability payments until Count I of their counterclaim is resolved or, alternatively, (2) having to make interim liability payments, in the event that arbitration moves forward. However, for the reasons explained above, the first prong of the relief sought is mooted because Count I of the counterclaim has been dismissed.  As to the second prong, Defendants have failed to plead that they timely initiated arbitration and cannot therefore show a likelihood of success on the merits, as is necessary to obtain a preliminary injunction. *See League of Women Voters of N.C.*, 769 F.3d at 236. Accordingly, Defendants' motion for a preliminary injunction will be denied.[6]

### IV.  CONCLUSION

For the reasons set forth above, the Fund's motion to dismiss Defendants' counterclaim, ECF 21, will be granted as to all counts, which are dismissed without prejudice. In light of that dismissal, Defendants' motion for a preliminary injunction, ECF 7, which is based on their counterclaim, will be denied. Finally, the Fund's motion for leave to file a surreply to the preliminary injunction motion, ECF 25, is denied as moot. A separate Order follows.

---

[6] Because Defendants have failed to plead facts supporting their counterclaim, this Court concludes that no hearing on their preliminary injunction motion is necessary. *See Haberland v. Bulkeley*, Civ. No. 5:11-CV-463-D, 2012 WL 1564519, at *3 (E.D.N.C. May 2, 2012) ("[A] plaintiff's failure to allege facts supporting his claim for relief under the governing law obviates any need for a [preliminary injunction] hearing." (citations omitted)); *Bradley v. Pittsburgh Bd. of Educ.*, 910 F.2d 1172, 1175-76 (3d Cir. 1990) (explaining that a preliminary injunction hearing is not necessary "if the movant is proceeding on a legal theory which cannot be sustained, because then there could be no showing of a likelihood of success on the merits").

Dated: May 8, 2023

_____/s/_____
Stephanie A. Gallagher
United States District Judge