IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|   |   |   |
|---|---|---|
| INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION FUND, *et al.*, | * | |
| Plaintiffs, | * | |
| v. | * | Civil No. SAG-23-00045 |
| FLORIDA GLASS OF TAMPA BAY, INC., *et al.*, | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff International Painters and Allied Trades Industry Pension Fund and its fiduciary, Terry Nelson (collectively, "the Fund"), filed this action seeking to collect withdrawal liability and additional statutory damages pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"). ECF 1. The Fund and Defendants Florida Glass of Tampa Bay, Inc. ("Florida Glass"); American Products, Inc.; American Products Production Company of Pinellas County, Inc.; API Commercial Installation, Inc.; API Commercial Architectural Products, Inc.; Charles & Thomas Properties, LLC; Muraco & Mullan Properties, Inc.; Ceraclad South, LLC; JCM Properties LLC; FenWall, LLC; and Specialty Metals Installation, LLC (collectively, "Defendants") have filed cross-motions for summary judgment, ECF 48, 49, which are now fully briefed, ECF 52, 53, along with a joint statement of undisputed material facts, ECF 47, and attached exhibits. No hearing is necessary to resolve the two motions. *See* Local Rule 105.6 (D.

Md. 2023). For the reasons that follow, the Fund's motion for summary judgment, ECF 48, will be granted, and Defendants' motion for summary judgment, ECF 49, will be denied.

## I.    FACTUAL BACKGROUND

The Fund is an ERISA-regulated multiemployer pension plan, administered by a board of trustees consisting of employer and union representatives. ECF 47 ¶¶ 2-3. The Fund provides retirement and related benefits to eligible participants and beneficiaries. *Id.* ¶ 3. During relevant times, Defendant Florida Glass of Tampa Bay, Inc. ("Florida Glass") was a contributing employer to the Fund, with substantially all of its covered employees in the building and construction industry. *Id.* ¶¶ 5, 9. The remaining Defendants are or were under common control with Florida Glass. *Id.* ¶ 6.

In and before 2015, Florida Glass owed pension contributions to the Fund for work performed by its employees pursuant to certain collective bargaining agreements ("CBAs"). *Id.* ¶ 7. In 2015, Florida Glass ceased having an obligation to contribute to the Fund under the CBAs. *Id.* ¶ 8. On August 9, 2016, Florida Glass filed for Chapter 11 bankruptcy in a case captioned *In re Florida Glass of Tampa Bay, Inc.*, No. 8:16-bk-6874 (Bankr. M.D. Fla.). *Id.* ¶ 10. Florida Glass operated and planned to reorganize at that time but did not owe any contributions to the Fund during its bankruptcy. *Id.* ¶¶ 11, 12.

The law firm then-representing the Fund, Jennings Sigmond, P.C. ("Jennings Sigmond"), had a standard practice to prepare and file two proofs of claim when an employer against which the Fund had a claim for delinquent contributions filed for bankruptcy. *Id.* ¶ 14. One of its two standard proofs of claims was a contingent proof of claim for withdrawal liability.[1] *Id.* Jennings Sigmond's contingent proofs of claim for withdrawal liability attach a worksheet of withdrawal

---

[1] An explanation of withdrawal liability, and why the Fund's claim would be contingent, appears in the "Legal Standards" section below.

liability calculations as an exhibit. *Id.* ¶ 15.  Jennings Sigmond does not conduct any investigation before filing such contingent proofs of claim for withdrawal liability and does not seek approval from the Fund's Trustees before filing them. *Id.* ¶¶ 17, 18.

At the beginning of each year, the Fund's computer auto-generates a list of employers that have not contributed to the Fund in the past five years. *Id.* ¶ 20. The Fund then asks Jennings Sigmond to investigate each entry and recommend to the Fund's Trustees whether to assess each listed employer for withdrawal liability. *Id.* After considering the recommendations, the Trustees vote on whether to assess each employer for withdrawal liability. *Id.* ¶ 23. The reason Jennings Sigmond files contingent proofs of claim in bankruptcy before the Trustees decide about assessment is to preserve the Fund's claim for withdrawal liability in the future – Jennings Sigmond fears that if it does not file contingent proofs of claim, any eventual claim for withdrawal liability could be deemed cleared in the bankruptcy. *Id.* ¶ 24.

In the *Florida Glass* matter, the Bankruptcy Court required creditors to file proofs of claim by November 28, 2016, specifying that "[If]f your claim is designated as . . . contingent, you must file a proof of claim or you might not be paid on your claim." *Id.* Jennings Sigmond filed a contingent proof of claim for withdrawal liability on November 10, 2016 (the "contingent Proof of Claim"). *Id.* ¶ 26.  The contingent Proof of Claim did not provide any explanation of the contingency, but simply identified the basis of the Fund's claim as "Contingent Statutory Withdrawal Liability." *Id.* ¶ 27(c). It specified the amount of the claim as $1,577,168 and attached a worksheet exhibit showing a total of $1,577,168 in lump sum withdrawal liability or a 19-month payment schedule option, which added interest and resulted in $1,627,538 in total payments. *Id.* ¶ 27(d). The Fund's contingent Proof of Claim averred that a portion of the claim, $202,324.87, was entitled to priority under the Bankruptcy Code. *Id.* ¶ 28. Prior to filing the contingent Proof of

Claim, neither the Fund nor Jennings Sigmond investigated to see if Florida Glass shared common control with any other entities. *Id.* ¶ 32.

None of the Defendants in this case received any direct correspondence or notification from the Fund in 2016 regarding a potential claim for withdrawal liability, other than the contingent Proof of Claim that the Fund filed in the Bankruptcy Court. *Id.* ¶ 35. Defendants did not make any withdrawal liability payments to the Fund before January 9, 2017. *Id.* ¶ 36. Defendants also did not request review of the contingent Proof of Claim under 29 U.S.C. § 1399(b)(2) or demand arbitration with respect to the contingent Proof of Claim. *Id.* ¶¶ 38, 39.

On July 12, 2017, Florida Glass converted its bankruptcy to Chapter 7. *Id.* ¶ 41. The Bankruptcy Court appointed a new Chapter 7 Trustee, Dawn Carapella. *Id.* ¶ 42. Trustee Carapella did not understand the Fund's Proof of Claim to be contingent and did not file an objection to it. *Id.* ¶ 44, ECF 49-7 at 5-6. Without any objections filed, the Fund's claim was allowed pursuant to 11 U.S.C. § 502(a). ECF 47 ¶¶ 44, 45. In January and October, 2021, the Fund received total distributions of $48,349.35 from the Trustee relating to the priority portion of its contingent Proof of Claim. *Id.* ¶ 46. The Fund did not inform the Bankruptcy Court that its Proof of Claim had been contingent and that the contingency had not yet been satisfied. *Id.* ¶ 48.

In 2021, Florida Glass appeared on the Fund's annual auto-generated list and Jennings Sigmond began investigating whether to assess withdrawal liability. *Id.* ¶ 54. In its investigation, Jennings Sigmond identified the other Defendants as members of the Florida Glass-controlled group and recommended to the Fund's Trustees that they assess the Defendants with withdrawal liability. *Id.* ¶ 56. Following the Trustees' vote, on March 16, 2022, the Fund sent notice and demand letters to the Defendants asserting liability of $1,577,168 in connection with Florida Glass's withdrawal from the Fund. *Id*. ¶ 61; ECF 47-12. The Fund attached the same 19-month

payment plan chart, with the additional interest charges, to its 2022 notice and demand letter. ECF 47-12 at 5-12. Even in 2022, the payment plan chart did not credit the $48,349.35 that the Fund had received in 2021 via its bankruptcy claim. *Id.* ¶ 63. Upon receipt of the notice and demand letters, pursuant to the MPPAA's dispute-resolution procedures, *see* 29 U.S.C. § 1399(b)(2), Defendants requested review of their withdrawal liability on April 14, 2022. *Id.* ¶ 65; 47-13; ECF 6, Countercl. ¶ 29, ¶ 32; *see* 29 U.S.C. § 1401(a)(1). The Fund ultimately denied Defendants' request for review on November 30, 2022. ECF 47 ¶ 73; ECF 47-14; ECF 6, Countercl. ¶ 34.

The Fund then filed the instant action to claim the withdrawal liability it believes Defendants owe. ECF 47 ¶ 74. Defendants contend that the Fund's lawsuit is time-barred. *Id.* ¶ 75.

## II.  LEGAL STANDARDS

### A.  Summary Judgment

Both parties seek summary judgment. Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden of showing that there is no genuine dispute of material fact. *See Casey v. Geek Squad Subsidiary Best Buy Stores, L.P.*, 823 F. Supp. 2d 334, 348 (D. Md. 2011) (citing *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987)). If the moving party establishes that there is no evidence to support the non-moving party's case, the burden then shifts to the non-moving party to proffer specific facts to show a genuine issue exists for trial. *Id.* The non-moving party must provide enough admissible evidence to "carry the burden of proof in [its] claim at trial." *Id.* at 349 (quoting *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315–16 (4th Cir. 1993)). The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient; there must be evidence on which the jury could reasonably find in its

favor. Id. at 348 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986)). Moreover, a genuine issue of material fact cannot rest on "mere speculation, or building one inference upon another." *Id.* at 349 (quoting *Miskin v. Baxter Healthcare Corp.*, 107 F. Supp. 2d 669, 671 (D. Md. 1999)).

Additionally, summary judgment shall be warranted if the non-moving party fails to provide evidence that establishes an essential element of the case. *Id.* at 352. The non-moving party "must produce competent evidence on each element of [its] claim." *Id.* at 348–49 (quoting *Miskin*, 107 F. Supp. 2d at 671). If the non-moving party fails to do so, "there can be no genuine issue as to any material fact," because the failure to prove an essential element of the case "necessarily renders all other facts immaterial." *Id.* at 352 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)); *Coleman v. United States*, 369 F. App'x 459, 461 (4th Cir. 2010) (unpublished)). In ruling on a motion for summary judgment, a court must view all the facts, including reasonable inferences to be drawn from them, "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). Where, as here, the movant seeks summary judgment on an affirmative defense like the statute of limitations, "it must conclusively establish all essential elements of [the] defense." *Ray Commc'ns, Inc. v. Clear Channel Commc'ns, Inc.*, 673 F.3d 294, 299 (4th Cir. 2012) (citing *Celotex*, 477 U.S. at 331).

### B. Relevant Legal Concepts

True to their name, multiemployer pension plans rely on payments from multiple employers to fund the plan's pension obligations. Obviously, when one employer stops making contributions to an underfunded multiemployer pension plan, the other employers are left with increased liability. To address this problem, ERISA and the MPPAA set up a construct making it easier for multiemployer pension plans to extract "withdrawal liability" from employers who are

withdrawing from the plan, to ensure that their fair share of the contribution is paid. Withdrawal liability is imposed not only on the contributing employer (here, Florida Glass) but also on any entity under common control with the contributing employer who performs covered work within the five-year window. The parties agree that the other Defendants are or were under common control with Florida Glass. ECF 47 ¶ 6.

The MPPAA, however, also recognizes unique attributes of employment in the building and construction industry. It is not uncommon for employees in that industry to work with multiple employers over the course of a year, on a project-to-project basis. And it is not uncommon for employers to perform work (and make contributions to a plan) during part of the year but to cease making contributions when a project ends, while intending to hire employees and return to contributing once a new project commences. In recognition of those prevalent situations, the MPPAA has unique withdrawal liability rules for employers in the building and construction industry ("BCI Employers"). 29 U.S.C. § 1383(b). BCI Employers do not become subject to withdrawal liability each time their contributions cease. Instead, BCI Employers who have ceased contributing to a plan are subject to the BCI exemption, which provides that they only owe withdrawal liability where they (1) continue to perform covered work in the jurisdiction of the CBA or (2) resume covered work within five years after the date on which their obligation to contribute under the plan ceases. 29 U.S.C. § 1383(b)(2)(B). Once liability under the BCI exemption is triggered, an employer's withdrawal is then deemed to have occurred as of the cessation of its obligation to contribute. 29 U.S.C. § 1383(e). In this case, Florida Glass's obligation to contribute to the Fund ceased in 2015. ECF 47 ¶ 8.

The MPPAA also requires arbitration of a multitude of issues relating to an employer's liability under the plan. The purpose of the arbitration requirement is to minimize cost to the plan

7

and preserve plan assets by obviating the need for expensive litigation. Specifically, arbitration is required in certain circumstances to facilitate the quick and informal resolution of disputes over withdrawal liability. The MPPAA provides:

> Any dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of . . . title [29] shall be resolved through arbitration.

29 U.S.C. § 1401(a)(1). Two separate disputes, relating to § 1399 of Title 29, are at issue in this case. First, the parties dispute whether the Fund's contingent Proof of Claim constituted a notification and demand for payment pursuant to 29 U.S.C. § 1399(b)(1), which reads:

> (b) Notification, demand for payment, and review upon complete or partial withdrawal by employer
>
> (1) As soon as practicable after an employer's complete or partial withdrawal, the plan sponsor shall—
>
> (A) notify the employer of—
>
> (i) the amount of the liability, and
>
> (ii) the schedule for liability payments, and
>
> (B) demand payment in accordance with the schedule.

Second, the parties dispute whether the Fund's contingent Proof of Claim constituted an acceleration of withdrawal liability pursuant to 29 U.S.C. § 1399(c)(5), which reads:

> (5) In the event of a default, a plan sponsor may require immediate payment of the outstanding amount of an employer's withdrawal liability, plus accrued interest on the total outstanding liability from the due date of the first payment which was not timely made. For purposes of this section, the term "default" means—
> (A) the failure of an employer to make, when due, any payment under this section, if the failure is not cured within 60 days after the employer receives written notification from the plan sponsor of such failure, and
> (B) any other event defined in rules adopted by the plan which indicates a substantial likelihood that an employer will be unable to pay its withdrawal liability.

Certain bankruptcy concepts are also relevant to this Court's analysis. The Bankruptcy Code states that a Proof of Claim is deemed filed for any scheduled debt except one "that is

scheduled as disputed, contingent, or unliquidated." 11 U.S.C. § 1111. Bankruptcy Rules 8–401 and 10–401 require a creditor whose claim is listed as disputed, contingent, or unliquidated to file a Proof of Claim prior to the time of confirmation of the plan or before any other date fixed by the Court. As one bankruptcy judge has explained:

> Section 502(b) of the Bankruptcy Code, which *does* address claim objections, provides, inter alia, for the disallowance of a claim to the extent "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law *for a reason other than because such claim is contingent or unmatured*." 11 U.S.C. § 502(b)(1) (emphasis added). As such, the Bankruptcy Code itself reflects that the contingent, unmatured nature of a debt is not itself a basis for disallowance of a claim. As the court in *In re Great Alliance Title and Escrow, LLC*, 2009 WL 2018986 (Bankr. E.D. Va. July 5, 2009) reasoned:
>
>> As a threshold matter, the court agrees with [the claimant] that a claim is not subject to disallowance simply because it is unliquidated or contingent. The Bankruptcy Code's definition of a claim is very broad and specifically includes rights to payment that are unliquidated or contingent. The grounds for disallowance of a claim – which are set forth in § 502 of the Bankruptcy Code – do not include the unliquidated or contingent nature of the claim. Indeed, the provision for disallowance of a claim on the ground that it is unenforceable against the debtor under applicable law specifically *excludes* disallowance 'because such claim is contingent or unmatured.' Rather, the Bankruptcy Code explicitly requires [the] court to *estimate* for purpose of allowance 'any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case.
>
> *Id.* at *2 (emphasis in original) (internal statutory citations omitted); *see also, e.g.*, *In re Morales*, 506 B.R. 213, 221 (Bankr. S.D.N.Y. 2014) ("Pursuant to § 502(b)(1), an objection to a claim cannot stand if the sole basis for the objection is that the claim is 'contingent or unmatured.'"); *In re New Power Co.*, 313 B.R. 496, 507 (Bankr. N.D. Ga. 2004) (discussing the grounds for disallowance of a claim under § 502(b) and stating that "the fact that a claim is contingent or unmatured is not grounds to disallow a claim unless that claim is for unmatured interest)
>
> The Debtor's Claim Ripeness Argument hinges entirely on the CFTC's claims having been contingent and unliquidated until the Judgment was entered. That is not a proper basis for objection, and as such is not a basis for disallowance of the Proofs of Claim.

9

*In re Higgins*, Bankr. No. 22-12021-MDC, 2024 WL 3517390, at *9 (Bankr. E.D. Pa. July 23, 2024). In other words, a contingent claim is nevertheless allowable. And a contingent claim can also be filed as a priority claim, particularly because the contingency may be satisfied before the claim is processed.

### III.  ANALYSIS

#### A.  Waiver and Arbitration

With that background, the initial question presented is whether Defendants have waived their ability to present their statute of limitations argument by failing to seek arbitration of two disputes arising under 29 U.S.C. § 1399: whether the contingent Proof of Claim constituted (1) a notice and demand for withdrawal liability and (2) an acceleration of that demand. In this Court's view, because the MPPAA expressly requires those disputes to be arbitrated, Defendants lack an ability to establish predicate facts necessary to maintain their limitations defense.

In contending that the statute of limitations issue need not be arbitrated, Defendants aptly summarize the issue presented: "If the Fund's Proof of Claim in the Florida Glass Bankruptcy was a notice and demand for withdrawal liability and an acceleration of that demand, the Fund's current lawsuit is time-barred under ERISA § 4301(f), because the Fund filed more than six years after it filed the proof of Claim." ECF 49-1 at 20 (footnote omitted). While Defendants are entirely correct that the question of the statute of limitations is for the Court, not an arbitrator, that limitations question cannot be decided without determining, under 29 U.S.C. §§ 1399(b)(1) and 1399(c)(5), whether the contingent Proof of Claim constituted a notice and demand for withdrawal liability and an acceleration of that demand. And those questions are "statutorily committed to arbitration in the first instance." *Giroux Bros. Transp. v. New England Teamsters & Trucking Indus. Pension Fund*, 73 F.3d 1, 4 (1st Cir. 1996). The appropriate means for a defendant to challenge the timing

and conditions of a withdrawal liability demand is through arbitration, subject to this Court's eventual review of the arbitrator's ruling. *See* 29 U.S.C. § 1401(b)(2) (permitting a party to a bring an action "in an appropriate United States district court in accordance with section 1451 of this title to enforce, vacate, or modify the arbitrator's award").

This Court does not ignore the practical conundrum presented in the instant circumstance. In 2016, when the Fund filed its contingent Proof of Claim, Florida Glass would have had no reason to seek an arbitrator's ruling about whether the Proof of Claim constituted a notice and demand for withdrawal liability or an acceleration of that demand.[2] It would, however, have had a reasoned basis for doing so upon receipt of the Fund's notice and demand in 2022 – to raise the issue that it had already received a notice and demand six years prior and to clarify which was the operative document. And whether, in 2022 or at any other time, Defendants would have had an argument for equitable tolling of the arbitration deadline is not a question presented to this Court.

Defendants' failure to place their § 1399 issues into arbitration leaves this Court unable to reach the conclusions Defendants now urge it to reach. Such determinations would invade the province reserved to arbitration by the MPPAA. While this Court does not conclude, then, that Defendants have waived their statute of limitations defense, it does conclude that they are unable to establish the facts necessary to invoke that defense in this forum.

---

[2] This Court notes, as discussed below, that only Florida Glass, not the other Defendants, would presumably have been in a position to be privy to the Bankruptcy Court filings in 2016. But courts have determined that "notice to one member of the control group constitutes notice to all members of the group." *McDonald v. Centra, Inc.*, 946 F.2d 1059, 1062 (4th Cir. 1991). In fact, the cases that Defendants cite for the proposition that courts have decided "whether a proof of claim filed in bankruptcy court is sufficient notice and demand of withdrawal liability" in fact turned on the issue of whether notice to one member of the group served as notice to all, not, as here, on whether the proof of claim was intended to be notice to any member. ECF 53 at 9; *see, e.g.*, *Trs. of the Chicago Truck Drivers, Helpers & Warehouse Workers Union (Indep.) Pension Fund v. Central Transport, Inc.*, 888 F.2d 1161, 1162 (7th Cir. 1989); *McDonald*, 946 F.2d at 1059 (considering a situation in which a fund sent both a notice and demand and filed a proof of claim).

### B. Notice/Demand and Acceleration

Even if this Court were to reach the two § 1399 issues on their merits, however, it would not find that the Fund's contingent Proof of Claim constituted either a notice and demand for withdrawal liability or an acceleration of withdrawal liability. The contingent Proof of Claim was not sent to the Defendants, undermining that notion that it was either intended as a "notice" or a "demand." And it was expressly marked as "contingent." Florida Glass did not respond by requesting review of its withdrawal liability, as the Defendants did when they received the official notice and demand in 2022.

As for whether the Fund's contingent Proof of Claim constituted an acceleration, it attached a 19-month payment schedule option, which directly contradicts the notion that it was meant to demand accelerated payment of the total sum. Moreover, the Supreme Court has stated that acceleration occurs only if "the plan properly exercises the acceleration option." *Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp.,* 522 U.S. 192, 202 (1997). The Fund did not take the steps required by § 11.28(e) of its Rules and Regulations to accelerate Florida Glass's withdrawal liability in the 2016 period. *See* ECF 47 ¶ 33.

Nothing about the Bankruptcy Court's actions transformed the contingent Proof of Claim into a notice and demand or an acceleration. The contingent Proof of Claim was allowed, as it should have been under the Bankruptcy Code, because the Trustee did not file an objection. *See id*. ¶¶ 44-45. The Trustee then paid some portion of the priority portion of the Fund's claim, potentially because of a failure to recognize the unspecified contingency or to investigate whether the contingency had been satisfied. *See id.* ¶ 46. Even if payment were made in error by the Trustee, the nature of the Fund's contingent Proof of Claim is unaltered.

Finally, Defendants' potentially valid criticisms of the Fund's conduct in the bankruptcy matter do not lead to a conclusion that its contingent Proof of Claim constituted a notice and demand or an acceleration. Had the Fund clearly specified the nature of the contingency when marking its proof of claim as "contingent," the Trustee may have evaluated the claim differently when making payment decisions. And when the Trustee paid a portion of the contingent claim in 2021, the Fund did not contact the Bankruptcy Court to report that it had been paid before the contingency was satisfied. *Id*. ¶ 48. Moreover, the Fund did not deduct the Trustee's payment from the withdrawal liability it later demanded from the Defendants. *Id*. ¶ 63. In this Court's view, however, those facts, individually or collectively, do not convert the 2016 contingent Proof of Claim into something it was not – a notice and demand for withdrawal liability or an acceleration of withdrawal liability. For that reason, even if the MPPAA did not mandate that such issues be arbitrated, this Court would rule against Defendants on their assertion that the Fund's claim is presently time-barred.[3]

**CONCLUSION**

For the reasons set forth above, Defendants' motion for summary judgment premised on their limitations argument, ECF 49, is denied. The Fund's motion for summary judgment, ECF 48, is granted, and the Fund will be afforded 30 days from the date of this Memorandum Opinion and Order to file a motion seeking damages.  A separate Order follows.


Dated: October 22, 2024                          /s/
                                    Stephanie A. Gallagher
                                    United States District Judge

---

[3] This Court notes that, in adjudicating these motions, it did not assign weight to the expert report proffered by Defendants. ECF 49-8. That report purported to apply the law to the facts of this case, which is the role of this Court, and this Court did not find the expert's analysis to be helpful.