IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION FUND, *et al.*, | * * * * * | |
| Plaintiffs, | * * | |
| v. | * * | Civil No. SAG-23-00045 |
| FLORIDA GLASS OF TAMPA BAY, INC., *et al.*, | * * * | |
| Defendants. | * * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

On October 22, 2024, this Court granted summary judgment on the issue of liability in this matter on behalf of Plaintiff International Painters and Allied Trades Industry Pension Fund and its fiduciary, Terry Nelson (collectively, "the Fund"), on its claims for withdrawal liability and additional statutory damages pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"). ECF 54, 55. The Fund has now filed a motion seeking damages against Defendants Florida Glass of Tampa Bay, Inc. ("Florida Glass"); American Products, Inc.; American Products Production Company of Pinellas County, Inc.; API Commercial Installation, Inc.; API Commercial Architectural Products, Inc.; Charles & Thomas Properties, LLC; Muraco & Mullan Properties, Inc.; Ceraclad South, LLC; JCM Properties LLC; Fenwall, LLC; and Specialty Metals Installation, LLC (collectively, "Defendants"), ECF 56. Defendants opposed the motion in part, ECF 59, and the Fund has filed a reply, ECF 60. This Court has reviewed the briefing with the attached exhibits and finds that no hearing is necessary to resolve the motions. *See* Local Rule

105.6 (D. Md. 2023). For the reasons that follow, the Fund's motion will be granted and judgment will be entered as described herein.

## I. SUMMARY OF AGREED AND DISPUTED ISSUES

Following this Court's liability ruling, Defendants "are neither challenging the amount of unpaid withdrawal liability, nor the interest, nor the liquidated damages." ECF 59 at1. This Court will accordingly order, as uncontested, that the Fund may retain the $1,230,000.00 in principal withdrawal liability and interest that Defendants have paid, and that damages will be awarded in the amount of $370,470.65 in outstanding withdrawal liability, $36,240.89 in statutory interest through November 19, 2024, $4,263 in statutory interest from November 20, 2024 through today ($40.60 per day); and $315,837.37 in liquidated damages.

The parties' instant dispute focuses entirely on the amount of attorney's fees requested by the Fund's counsel pursuant to 29 U.S.C. § 1132(g)(2)(D) (allowing a fund to collect "reasonable attorney's fees of the action, to be paid by the defendant.") An award of fees is mandatory, but Defendants' objections to the reasonableness of the Fund's fee request fall into two categories: (1) whether fees incurred in defending a related case filed in Florida should be recoverable, and (2) other suggested reductions to particular time entries. Each category of objections will be addressed in turn.

## II. THE FLORIDA CASE

The Fund filed the instant case on January 9, 2023. ECF 1. Before even filing their answer in the instant case, on February 24, 2023, a group consisting of all Defendants except Florida Glass filed a lawsuit against the Fund and its attorneys in Hillsborough County, Florida. *See Am. Prods. Prod. Co. of Pinellas Cnty. v. Armstrong*, Case No. 23-CA-001685 (Fla. 13th Jud. Cir.) (the

"Florida lawsuit").[1] Eventually, the trial court dismissed the Florida lawsuit with prejudice and the Florida Second District Court of Appeal affirmed the dismissal. *See* Case No. 2D2023-2353 (Fla. 2d DCA).

Importantly, the Florida lawsuit alleged that the filing of the instant action constituted defamation and an abuse of process under Florida tort law. *Am. Prods. Prod. Co. of Pinellas Cnty., Inc. v. Armstrong*, 674 F. Supp. 3d 1118, 1121 (M.D. Fla. 2023). Many of the allegations in the Florida lawsuit's Complaint mirror the allegations in Defendants' counterclaim seeking declaratory and injunctive relief in the instant case. *See* ECF 56-2 at 15–16[2] (providing summary chart). It would be impossible to conclude that the Florida lawsuit constituted anything other than a collateral attack on the instant case, brought in a separate forum.

This Court agrees with the Fund that the Fourth Circuit's ruling in *Keyes Law Firm, LLC v. Napoli*, 120 F.4th 139 (4th Cir. 2024) is instructive. *Keyes Law Firm* was not an ERISA case and it did not construe the phrase "of the action" in 29 U.S.C. § 1132(g)(2)(D). But the facts are similar to this case, in that the defendants in the first-filed federal action filed a separate lawsuit in state court alleging that the federal suit constituted an abuse of process and that the federal claims were "frivolous and malicious." *Id.* The *Keyes Law Firm* plaintiff eventually prevailed in the federal action, and when considering an award of attorneys' fees in the federal case, the Fourth Circuit approved an award of attorney's fees from the state court action as an appropriate sanction

---

[1] The Florida lawsuit was briefly removed to federal court in Florida before that court remanded the case to the state court. *See Am. Prods. Prod. Co. of Pinellas Cnty., Inc. v. Armstrong*, 674 F. Supp. 3d 1118, 1125 (M.D. Fla. 2023). The Florida federal court appeared to be under a misimpression that the Florida lawsuit "does not contest withdrawal liability" when it is plain from the filings that it did. The Florida state court, in dismissing the Florida lawsuit with prejudice, properly found that the claims raised in [the Florida lawsuit] Complaint are substantially the same and involve the same parties as the instant case, thus finding them to be preempted.

[2] These page references are to the ECF page numbers in the captioning at the top of the page.

under 28 U.S.C. § 1927. The Court reasoned: "If Napoli finds fault with the district court's rulings, it can take an appeal. Its recourse lies with the Fourth Circuit, not the state courts of New York. Napoli asks that we embrace the proposition that a single lawsuit may routinely spawn two others. But no." *Id.* at 144.

Of course, here, the Fund is not seeking sanctions under 28 U.S.C. § 1927. Instead, it is seeking "attorney's fees of the action" pursuant to ERISA's provision in 29 U.S.C. § 1132(g)(2)(D). This Court agrees that under the circumstances, it is fair to construe "attorney's fees of the action" to include the fees that should have been incurred in the federal action had the Defendants simply raised their claims as counterclaims in the federal case instead of unsuccessfully "spawning" a separate case in state court. As the Fourth Circuit has recognized, "the word 'action' need not necessarily mean litigation in district court." *Rego v. Westvaco Corp*, 319 F.3d 140, 150 (4th Cir. 2003) (citing *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 559–61 (1986)); *see also Bender v. Newell Window Furnishings, Inc.*, 560 F. App'x 469, 476 (6th Cir. 2014) (allowing, under 29 U.S.C. § 1132(g)(2)(D), recovery of fees incurred in a separate judicial proceeding to avoid forcing "the plaintiffs to bear the costs of defending themselves against a company that brought suit preemptively in an improper forum."). To disallow the Fund's fees from the Florida lawsuit would simply encourage the conduct the Fourth Circuit condemned in *Keyes,* when it noted "[i]t is hard to imagine a more flagrant challenge to the district court's authority or a more obvious spur to litigation hither and yon" than allowing a party to avoid ERISA attorney's fees by bringing separate actions challenging the validity of ERISA suits in state courts. *Keyes*, 120 F.4th at 144.

"ERISA is a 'remedial statute' that 'should be liberally construed in favor of protecting the participants in employee benefit plans." *Dawson-Murdock v. Nat'l Counseling Grp., Inc.*, 931 F.3d

4

269, 278 (4th Cir. 2019) (quoting *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 123 (4th Cir. 1991). Congress's purpose in allowing pension funds to recover attorneys' fees incurred in pursuing delinquent withdrawal liability is to preserve the funds' assets for their intended purpose. The Defendants' actions here expressly contravened that purpose, multiplying the litigation costs by forcing the Fund to litigate not only in federal court but in a distant state court at the same time.[3] The statute should be and will be read to protect the Fund's participants from bearing those costs.

### III.   OTHER SUGGESTED REDUCTIONS

#### A. Hourly Rates Exceeding Court Guidelines

The Defendants first argue that the Fund's fees are unreasonable because some of the requested hourly rates exceed the fee guidelines in this Court's Local Rules. This Court assesses reasonable attorney's fees by determining the lodestar amount, which is a "reasonable hourly rate multiplied by hours reasonably expended." *Grissom v. The Mills Corp.*, 549 F.3d 313, 320–21 (4th Cir. 2008). A reasonable hourly rate is "calculated according to the prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). This Court uses Appendix B to its Local Rules to provide advisory guidelines that are often deemed reasonable, but notes that "the factors established by case law obviously govern over them." Local Rules, Appx. B ¶3 fn.

It is worth noting that this Court's guideline ranges have not been updated in many years, and the Court is presently engaged in a public process to update the fee guidelines to better align

---

[3] The Fund repeatedly argues that this Court could alternatively use 28 U.S.C. § 1927 "to hold Defendants liable for the fees regarding the Florida Action." *See, e.g.,* ECF 60 at 15 n. 13. The problem is that 28 U.S.C. § 1927 provides an avenue to sanction *attorneys* who engage in vexatious litigation, not their clients. Without opining on whether 28 U.S.C. § 1927 statute might be applicable here, it clearly provides no basis for the fund to collect its fees from the Defendants themselves. In the *Keyes Law Firm* case, all parties were themselves attorneys, eliminating that distinction.

5

them with prevailing market conditions. While the guidelines are still an advisory tool, then, this Court is not inclined to adhere to them strictly in the manner Defendants urge. Defendants do not even specify what the precise differences are between the guidelines and the Fund's requests, instead asking Court to "require Plaintiff's to reduce all fees that are outside of the Court's Guideline Ranges."[4] ECF 59 at 14–15 (noting only that "the hourly rates for some of Plaintiff's attorneys and all of Plaintiff's paralegals…exceed the maximum of this Court's Guideline Ranges.").

This Court endeavored to identify the relevant discrepancies itself. It appears that the vast majority of the billing entries are within the fee guidelines' reasonable ranges, with three exceptions: (1) a retired judge at the Fund's law firm, in 2024, charged an hourly rate of $500 when the fee guideline maximum was $475; (2) a junior associate at the firm, in 2024, charged $230 per hour when the fee guideline maximum was $225; and (3) the law firm's paralegals, from 2022–2024. charged rates between $175 and $200 when the Guideline maximum was $150. The differences between the charged rates and the aging guideline ranges were modest. The largest discrepancy is that involving the paralegal rates, and it cannot be disputed that use of the paralegals saved money vis-à-vis asking lawyers to perform the same tasks. Moreover, other than those three exceptions, the rates charged by others of the lawyers were below, and sometimes significantly below, the ranges that could have been charged under the guidelines. This Court therefore concludes finds that, in total, the hourly rates charged by the Fund's firms, in the circumstances of this case, were reasonable.

### B. Time entries relating to mandatory arbitration and not lawsuit

---

[4] Defendants' Opposition fails to even cite this Court to the exhibit in which the allegedly higher rates are requested.

The Defendants contend that a number of the time entries relate to "mandatory arbitration" and "not the Fund's action to enforce its right to delinquent withdrawal liability payments." ECF 59 at 16. They are correct that ERISA requires mandatory arbitration of certain issues, 29 U.S.C. § 1401, and does not have a fee shifting provision relating to those arbitration fees. However, no arbitration occurred in this case because neither party initiated the process. Defendants identify a number of time entries, suggesting that they "were expended on the determination of whether the parties must arbitrate, which is a completely unrelated action." ECF 59 at 11. But since no arbitration occurred, the issues explored in the time entries (which largely relate to controlled group liability and investigation of controlled group targets) pertained to this Court case that was later filed. Although the contested time entries unquestionably pre-dated the litigation, they pertain to issues that eventually became part of this litigation (and the related Florida lawsuit), including the Fund's determination that complete withdrawal was triggered and the Fund's determination that the Defendants are all part of the controlled group. Because the issues relate to the litigation and not to an arbitration that never occurred, this Court declines to disallow the contested entries.

### C. Controlled Group Analysis Entries

Similarly, the Defendants contest another (somewhat overlapping) group of entries from 2022–early 2023 relating to controlled group analysis. ECF 59 at 14–15. While they argue that controlled group liability "was not a contested fact in this case" and "should have taken an hour or two at the most," *id.*, the record of time entries belies those notions. Time entries show that controlled group remained contested until Defendants retained ERISA-experienced counsel in March of 2023, and remained contested in the Florida lawsuit until its conclusion. *See* ECF 60 at 9 n.8 (identifying time entries reflecting the ongoing dispute). This Court therefore declines to disallow the entries relating to investigation and litigation of controlled group liability.

### D. April 7 2023 entries

The Defendants urge this Court to disallow two entries from April 7, 2023, believing that they "do not appear to be related to this matter." ECF 59 at 15. Having reviewed the explanation in the Fund's reply, this Court finds no basis to reduce these two entries, which pertain to the reply and surreply briefs regarding the injunction motion filed in this Court in April, 2023. The mere fact that this Court did not ultimately need to reach the grounds raised in the Fund's surreply does not mean that the fees for its preparation must be disallowed. *See Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983) (noting that "the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters."). Because the Fund prevailed as to the injunction motion, it is entitled to recover its fees.

### E. Assorted entries referring to local counsel or relating to quarterly fee statements.

The Defendants argue that a series of entries should be disallowed because they refer to "local counsel," pertain to the preparation or filing of quarterly fee statements, or exceed, by small amounts, the time entries on other occasions for preparing a cure notice. ECF 59 at 15–16. This Court credits the Fund's logical representation that the reference to "local counsel" relates to the Florida lawsuit, not the instant action. And this Court deems the entries relating to preparation of the quarterly fee statement and cure notices (some of which also include work on other items) to be reasonable and recoverable.

### F. Entries Relating to Florida Lawsuit

Finally, the Defendants ask to strike a number of fee entries pertaining to the Florida lawsuit. ECF 59 at 17–19. As addressed herein, this Court declines to disallow the time entries relating to defense of the Florida lawsuit, because it deems it to be part of "the action" pursuant to 29 U.S.C. § 1132(g)(2)(D).

8

## IV.     CONCLUSION

For the reasons set forth above, the Fund's motion for damages, ECF 56, will be granted in full and judgment will be entered by separate order in accordance with this memorandum opinion. This Court will not presently order any attorney's fees or costs post-dating November 20, 2024 so that Defendants may respond to the numbers proposed by Plaintiffs in their reply. Defendants may respond within two weeks of the date of this Opinion. If Defendants do not respond, this Court will amend its order of judgment to include the Plaintiffs' proposed costs and fees.

Dated: March 5, 2025                                   /s/
                                                    Stephanie A. Gallagher
                                                    United States District Judge